United States District Court
Southern District of Texas
**ENTERED**
August 15, 2016
David J. Bradley, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| CHOICE HOTELS INTERNATIONAL, INC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-15-2355 |
| | § | |
| FRONTIER HOTELS, INC., MUHAMMAD KHAN, ABDUS SALAM ,and DOES 1 through 20, | § | |
| | § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court is plaintiff Choice Hotels International, Inc.'s ("Choice Hotels") motion for summary judgment or alternatively, partial summary judgment. Dkt. 15. Defendants Frontier Hotels, Inc., Muhammad Khan, and Abdus Salam (collectively, "Defendants")[1] did not respond to the motion for summary judgment. After considering the complaint, motion, memorandum in support of the motion, and evidentiary record, the court is of the opinion that the motion should be GRANTED in part and DENIED in part.

### I. BACKGROUND

Choice Hotels is a publically traded company and one of the largest lodging franchisers in the world with about six thousand (6,000) franchised hotels. Dkt. 1 at 3. Choice Hotels offers hotel and motel services through several well-known brands such as CAMBRIA SUITES®, COMFORT INN®, COMFORT SUITES®, SLEEP INN®, and RODEWAY INN®. *Id.* Choice Hotels owns approximately twenty-four (24) different trademark registrations related to the "COMFORT" family of marks. *Id.* at 4–7.

---

[1] The Doe Defendants were never identified or served.

On November 20, 2008, Choice Hotels entered into a franchise agreement with Defendants. *Id.* at 8. This agreement permitted Defendants to operate a COMFORT INN® in Houston, Texas. *Id.* As part of this agreement, Defendants were required to fulfill several obligations. For example, Defendants were expected to pay certain monthly and affiliation fees as well as provide Choice Hotels with certain financial data. *Id.* The agreement allows for the termination of the franchise should the franchisees breach their obligations. *Id.* at 8–9. Section eleven (11) of the agreement states that upon termination, the former franchisees must "[i]mmediately discontinue any and all use of our Intellectual Property, refrain from using the Brand Marks to identify the Hotel and continue not to use the Choice-Related Words even after expiration or termination of the Agreement." *Id.* at 9; Dkt. 17, Ex. 25 at 12.

On June 7, 2014, Choice Hotels sent Defendants a notice of default alerting Defendants that they were in breach of the franchise agreement. Dkt. 1at 9; Dkt. 17, Ex. 26. Then, on October 31, 2014, Choice Hotels sent Defendants a second notice of default alerting Defendants that they were again in breach of their obligations. Dkt. 1 at 9–10; Dkt. 17, Ex. 27. This second notice advised Defendants that should they fail to remedy the default by paying all amounts due within ten (10) days, Choice Hotels would have the option to terminate the franchise agreement. *Id.*

Defendants failed to correct its state of default and on December 12, 2014, Choice Hotels sent Defendants a notice of termination. Dkt. 1 at 10; Dkt. 17, Ex. 28. The notice of termination advised Defendants that the termination of the franchise agreement was effective immediately, and it instructed Defendants to immediately cease and desist with the use of any of Choice Hotels registered trademarks. *Id.*

After the termination of the franchise agreement, Choice Hotels learned that Defendants had not discontinued use of the COMFORT INN® hotel marks. Dkt. 1 at 10–11. Choice Hotels received

a customer complaint on March 10, 2015 regarding Defendants' hotel. Dkt. 16 at 20; Dkt. 17, Exs. 33, 37 at 6. In this complaint, the guest noted that she had a poor experience at the hotel and had been unable to log the complaint on Choice Hotels' website. *Id.* Choice Hotels advised the customer that this was because Defendants' franchise agreement had been terminated. *Id.*

On April 21, 2015, Choice Hotels sent Defendants written notice advising them to cease and desist with the use of all COMFORT INN® marks. Dkt. 1 at 11. However, photographs from July 27, 2015, November 13, 2015, and April 27, 2016, show that Defendants did not comply with Choice Hotel's notice to stop using its registered trademarks. *See id.;* Dkt. 17, Exs. 30–32, 38. In these photos, the COMFORT INN® brand name, symbol, and color scheme are visible on both the hotel exterior and signage. *See id.* Moreover, a screen-shot taken from the Hotels.com website on May 13, 2016, shows a photo Defendants uploaded to the website to advertise their hotel has a visible COMFORT INN® mark. Dkt. 17, Exs. 34, 39. Also on this same website there were several negative guest reviews, including one from March 2016 where a guest complained that he or she was under the impression that the hotel was a COMFORT INN® until the guest attempted to lodge a complaint with COMFORT INN® and was alerted that the hotel was no longer affiliated with Choice Hotels. *See* Dkt. 16 at 20; Dkt. 17, Exs. 35, 39 at 2.

On August 13, 2015, Choice Hotels brought this lawsuit against Defendants alleging that Defendants violated Section 32 of the Lanham Act, 15 U.S.C. § 1114(1), because the Defendants' continued use of the COMFORT INN® family of marks is likely to cause confusion, mistake, or deception. Dkt. 1 at 12. In addition to trademark infringement, Choice Hotels also asserts claims for (1) violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a), false designation of origin; (2) Texas Common Law Trademark Infringement; and (3) Texas Common Law Unfair Competition.

*Id.* at 13–15. Defendants filed their answer to Choice Hotels' complaint on September 15, 2015. Dkt. 10.

Following a period of discovery, Choice Hotels filed the instant motion for summary judgment on May 16, 2016. Dkt. 15. Pursuant to the local rules of the Southern District of Texas, Choice Hotels served the motion for summary judgment via electronic service through the court's CM/ECF system. *Id.* at 5; *see also* S.D. Tex. L.R. 5.1. Defendants' deadline to answer or otherwise respond was June 6, 2016. *See* Fed. R. Civ. P. 12(a). To date, Defendants have not responded to the motion. Therefore, pursuant to Southern District of Texas Local Rule 7.4, the court deems that there is no opposition to this motion.

## II. Legal Standard

A court shall grant summary judgment when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). If the party meets its burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e).

The court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dall., Tex.*, 529 F.3d 519, 524 (5th Cir. 2008). The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence; disregard all evidence favorable to the moving party that the jury is not required to believe; and give credence to the evidence favoring the non-

moving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached. *Moore v. Willis Ind. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). However, the non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). By the same token, the moving party will not meet its burden of proof based on conclusory "bald assertions of ultimate facts." *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978); *see also Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1221 (5th Cir. 1985).

## III. ANALYSIS

### A. Liability

To determine whether Defendants are liable to Choice Hotels for trademark infringement and false designation of origin pursuant to the Lanham Act as well as for trademark infringement and unfair competition pursuant to Texas Common Law, the court must only conduct a single inquiry. This is because the facts that support a claim for trademark infringement under the Lanham Act also support a claim for false designation of origin under the Lanham Act. *See Choice Hotels Int'l., Inc. v. Patel*, 940 F. Supp. 2d 532, 538 (S.D. Tex. 2013) (Costa, J.); *Philip Morris USA Inc. v. Lee*, 547 F. Supp. 2d 667, 674 (W.D. Tex. 2008) (Martinez, J.). Additionally, "[a] trademark infringement and unfair competition action under Texas common law presents essentially 'no difference in issues than those under federal trademark infringement actions.'" *Horseshoe Bay Resort Sales Co. v. Lake Lyndon B. Johnson Improvement Corp.,* 53 S.W.3d 799, 806 n.3 (Tex. App.—Austin 2001, pet. denied) (quoting *Zapata Corp. v. Zapata Trading Int'l, Inc.*, 841 S.W.2d 45, 47 (Tex. App.—Houston [14th Dist.] 1992, no writ). And, "A determination of a likelihood of confusion

under federal law is sufficient to prove trademark infringement under Texas Law." *Dall. Cowboys Football Club, Ltd. v. Am.'s Team Prop., Inc.*, 616 F. Supp. 2d 622, 637 (N.D. Tex. 2009) (Kinkeade, J.). Finally, these same facts will support an action for unfair competition under Texas common law. *Id.*; *see also, e.g.*, *Marathon Mfg. Co. v. Enerlite Prods. Corp.*, 767 F.2d 214, 217 (5th Cir. 1985).

"To recover on a claim of trademark infringement, a plaintiff must first show that the mark is legally protectable and must then establish infringement by showing a likelihood of confusion." *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008). Additionally, under the Lanham Act, a cause of action for trademark infringement is established when a person "uses (1) any reproduction, counterfeit, copy, or colorable imitation of a mark; (2) without the registrant's consent; (3) in commerce; (4) in connection with the sale, offering for sale, distribution, or advertising of any goods; (5) where such use is likely to cause confusion, or to cause mistake or to deceive." *Id.* (quoting *Boston Prof'l Hockey Ass'n, Inc. v. Dall. Cap & Emblem Mfg., Inc.,* 510 F.2d 1004, 1009–10 (5th Cir.1975)).

Proof of registration of a trademark is prima facie evidence of the owner's exclusive right to use the trademark in commerce for the services specified in the registration. *Elvis Presley Enter., Inc. v. Capece*, 141 F.3d 188, 194 (5th Cir. 1998) (citing 15 U.S.C. § 1115(a)); *see also Choice Hotels Int'l.*, 940 F. Supp. 2d at 539. In this case, Choice Hotels has submitted unopposed evidence that it owns the COMFORT INN® family of marks. Dkt. 17, Exs. 1–24, 37 at 2–4. Because the motion is unopposed and Choice Hotels provided evidentiary support, there are no material facts in dispute regarding Choice Hotels' legally protected ownership of the marks at issue.

Next, the court considers whether Choice Hotels has satisfied its burden in providing evidence that Defendants used Choice Hotels' legally protected marks, without Choice Hotels'

consent, in commerce. A mark is considered used in commerce "when it is used or displayed in the sale or advertising of services and the services are rendered in commerce." 15 U.S.C. § 1127.

Here, the record clearly shows Defendants continued to use Choice Hotels' legally protected COMFORT INN® trademarks long after the termination of the franchise agreement as well as the April 2015 cease and desist letter. *See Choice Hotels Int'l.*, 940 F. Supp. 2d at 539; *Choice Hotels Int'l, Inc. v. Goldmark Hosp., LLC*, No. 3:12-CV-0548-D, 2014 WL 642731, at *4 (N.D. Tex. Feb. 19, 2014) (Fitzwater, J.) (establishing use without consent in commerce of legally protected trademarks when the former franchisee property still operated as a hotel and had failed to take down legally protected marks on exterior signage). Moreover, Defendants' use of the marks was clearly in connection with the sale, offering for sale, and advertising of services. The evidence shows visible COMFORT INN® marks in a photo uploaded by Defendants to a hotel booking site advertising the property. *Cf. Goldmark Hosp.*, 2014 WL 642731, at *4 (holding that defendant's display of signs with plaintiff's marks constituted advertising).[2]

The court now turns to the final element and inquires whether Choice Hotels has met its burden in establishing that there is a likelihood of confusion. The Lanham Act defines "confusion" as any activity that it likely "to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial acativities by another person." 15 U.S.C. § 1125(a). The Fifth Circuit uses eight, non-dispositive factors, to determine if a likelihood of confusion exists: "(1)

---

[2] Defendants contend in their answer that the signage remained in use while they awaited permits to take them down. *See* Dkt. 10 at 8–10. However, the use element does not depend upon intent. *See Choice Hotels Int'l.*, 940 F.Supp.2d at 539. Additionally, Defendants have failed to properly support their assertions with any evidence in the record in order to claim any genuine issue of material fact as to this element. *See* Fed. R. Civ. P. 56(e)(3).

strength of the plaintiff's mark; (2) similarity of design between the marks; (3) similarity of the products; (4) identity of retail outlets and purchasers; (5) similarity of advertising media used; (6) the defendant's intent; (7) actual confusion; and (8) degree of care exercised by potential purchasers." *Am. Rice, Inc.*, 518 F.3d at 329 (citations and internal quotation marks omitted). However, in *Paulsson Geophysical Servs. v. Sigmar*, the Fifth Circuit held that when a defendant uses a plaintiff's exact marks, a full "digits of confusion" analysis is not necessary. 529 F.3d 303, 310–311 (5th Cir. 2008). Furthermore, "The digits are a flexible and nonexhaustive list. They do not apply mechanically to every case and can serve only as guides, not as an exact calculus." *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 485 (5th Cir.2004). Some district courts in this circuit presume confusion exists when the marks are identical. *E.g.*, *Choice Hotels Int'l, Inc.*, 940 F. Supp. 2d at 540 ("When a defendant uses a plaintiff's exact marks . . ., courts within this Circuit have determined that a thorough analysis of the digits of confusion is unnecessary, and a presumption of confusion exists."); *E.&J. Gallo Winery v. Spider Webs Ltd.*, 129 F. Supp. 2d 1033, 1043 (S.D. Tex. 2001) ("Other federal courts have agreed that domain names that are substantially the same as a trademark are confusingly similar and create a presumption of confusion." (citing district court cases from Virginia, Pennsylvania, and New York)).

Here, it is unnecessary to presume confusion exists because there is uncontested evidence in the record of actual consumer confusion. It is clear that not only is there a likelihood of consumer confusion, but that consumer confusion exists.

In sum, the uncontested evidence in the record shows there is no genuine issue of material fact regarding Defendants' engagement in trademark infringement against Choice Hotels. Thus, Choice Hotels' motion for summary judgment as to liability is GRANTED.

**B. Permanent Injunction**

Pursuant to the Lanham Act, courts may grant an injunction "according to the principles of equity and upon such terms as the court may deem reasonable." 15 U.S.C. § 1116(a). Also, in order to obtain a permanent injunction, Choice Hotels must prove "(1) success on the merits; (2) that a failure to grant the injunction will result in irreparable injury; (3) that said injury outweighs any damage that the injunction will cause the opposing party; and (4) that the injunction will not disserve the public interest." *VRC LLC v. City of Dall.*, 460 F.3d 607, 611 (5th Cir. 2006) (citations omitted). The court is of the opinion that Choice Hotels has met this burden and the evidence supports an entry of a permanent injunction.

Here, the first factor, success on the merits, has already been established. Second, the existing evidence of customer complaints and customer confusion shows that Choice Hotels has suffered irreparable injury. Incidentally, even without this existing evidence, other courts in this district have held that "[w]hen a likelihood of confusion exists, the plaintiff's lack of control over the quality of the defendant's goods or services constitutes an immediate and irreparable injury, regardless of the actual quality of those goods or services." *Quantum Fitness Corp. v. Quantum LifeStyle Ctrs., L.L.C.*, 83 F. Supp. 2d 810, 831 (S.D. Tex. 1999) (citations omitted). Thus, it is clear that Choice Hotels has met its burden as to the second factor. Indeed, Defendants' continued use of Choice Hotels' marks to advertise its property coupled with existing customer complaints on online websites that Choice Hotels' reputation continues to be damaged clearly supports the contention that there is no adequate monetary remedy. *See, e.g.*, *Choice Hotels Int'l.*, 940 F. Supp. 2d at 543.

This brings the court to consideration of the third factor, the balancing of harms between Choice Hotels and Defendants. Here, if Defendants are allowed to continue their unauthorized use of Choice Hotels' marks, it is clear Choice Hotels will continue to suffer irreparable injury. The

customer complaints and confusion evince that Choice Hotels will continue to endure a loss of goodwill towards its business without a permanent injunction. Furthermore, any harm Defendants' will endure is inconsequential since the injunction simply requires them to comply with state and federal law. *Id.* (citations omitted).

Finally, "[t]he public interest is always served by requiring compliance with Congressional statutes such as the Lanham Act and by enjoining the use of infringing marks." *Quantum Fitness*, 83 F. Supp. 2d at 832 (citations omitted). Indeed, "a permanent injunction would serve the public interest by protecting consumers from deception of confusion." *Choice Hotels Int'l.*, 940 F. Supp. 2d at 543. Thus, the court finds the entry of a permanent injunction against Defendants is warranted in this case, and Choice Hotels' request for a permanent injunction is GRANTED.

**C. Monetary Remedies**

The Lanham Act allows plaintiffs "to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117. "In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount." *Id.* Courts may also award attorney fees when the case is deemed to be "exceptional." *Id.*

**1. Choice Hotels' request for Liquidated Damages**

In its motion for summary judgment, Choice Hotels argues it is entitled to liquidated damages as per Section 11.a. of the franchise agreement. Dkt. 16 at 22; Dkt. 17, Ex. 25 at 12. This section of the agreement allows for Choice Hotels to collect liquidated damages in the "sum of $2,500 for each day following the termination of this [a]greement that you continue to use our Intellectual Property." *Id.*

Choice Hotels has presented no authority indicating that it is entitled to recover liquidated damages due under the franchise agreement as damages under the Lanham Act and the court has found none. The Lanham Act states that a plaintiff can recover "any damages sustained." 15 U.S.C. § 1117. This same section also gives discretion to the court to award damages not to exceed three times the amount of *actual* damages. *Id.* Thus, to recover damages under the Lanham Act, Choice Hotels must submit evidence of *actual* damage that it has suffered. *Rodeway Inns Int'l., Inc. v. Amar Enter., Inc.*, 742 F. Supp. 365, 369 (S.D. Miss. 1990) (Lee, J.) ("A determination of damages under the Lanham Act must be supported by evidence of actual damage suffered by the plaintiff.").

The facts in *Rodeway Inns* are very similar to the facts at hand. *Id.* In *Rodeway Inns*, the plaintiff contended that the court could determine actual damages due under the Lanham Act by looking to its liquidated damages due under the contract the plaintiff had with a former licensee. *Id.* However, the court held that "[t]his argument is without merit" and explained that "[p]roof of the amount of liquidated damages due does not constitute proof that plaintiff has actually suffered damage in that amount." *Id.* Therefore, it is not appropriate for Choice Hotels to recover liquidated damages due under the franchise agreement for its four trademark infringement related causes of action.[3] The court is unable to assume that Choice Hotels' actual damages are the same as its contractual liquidated damages without any evidence supporting how Choice Hotels determined the $2,500 a day figure as being representative of its actual damages. *Id.* Thus, the court defers ruling on the amount of damages. Choice Hotels must provide further briefing on the issue of its actual damages within twenty (20) days of the date of this order.

---

[3]Choice Hotels does not assert a breach of contract claim.

**2. Attorneys' Fees**

In order for a plaintiff to be granted attorneys' fees under the Lanham Act, a case must be deemed "exceptional." 15 U.S.C. § 1117. Under the Lanham Act, "[a]n exceptional case is one where the violative acts can be characterized as malicious, fraudulent, deliberate, or willful." *Seven–Up Co. v. Coca–Cola Co.*, 86 F.3d 1379, 1390 (5th Cir.1996) (internal quotation marks omitted) (citing *Moore Bus. Forms, Inc. v. Ryu*, 960 F.2d 486, 491 (5th Cir.1992)). Here, Choice Hotels contends that this case rises to such a level and have requested leave to bring a motion on this matter. The court GRANTS Choice Hotels' request to file a motion for fees explaining why this case should be deemed exceptional.

## IV. CONCLUSION

For the reasons set forth above, Choice Hotels' motion for summary judgment or alternatively for partial summary judgment (Dkt. 15) is GRANTED on the issue of liability and the request for a permanent injunction. The court will consider damages and fees at a later date. Choice Hotels shall provide the court with a proposed permanent injunction. Choice Hotels shall also provide the court with further briefing on its actual damages as well as on the issue of attorneys' fees within twenty (20) days of the date of this order. Defendants must respond within twenty (20) days, and Choice Hotels will have five (5) days to reply. Costs are awarded to Choice Hotels.

Signed at Houston, Texas on August 15, 2016.

Gray H. Miller
United States District Judge