UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| CHOICE HOTELS INTERNATIONAL, INC., | § | |
| --- | --- | --- |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-15-2355 |
| | § | |
| FRONTIER HOTELS, INC., *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is plaintiff Choice Hotels International, Inc.'s ("Choice Hotels") unopposed motion for damages in its lawsuit against defendants Frontier Hotels, Inc., Muhammad Khan, and Abdus Salam (collectively, "Defendants"). Dkt. 23 (asking the court to rule on Dkt. 19).[1] Having considered the motion, evidence, and applicable law, the court is of the opinion that the previously denied portion of the motion should be GRANTED.

**I. Background**

This is a trademark infringement case. Dkt. 18 at 1. Choice Hotels owns twenty-four different trademark registrations related to the "COMFORT" family of marks. *Id.* In 2008, Choice Hotels entered into a franchise agreement with Defendants. *Id.* at 2. Under that agreement,

---

[1]Defendants' bankruptcy proceeding delayed the resolution of damages and attorneys' fees—the only issues still before the court. Dkt. 19. After determining Defendants' liability, the court requested supplemental briefing on Choice Hotels' actual damages and attorneys' fees. Dkt. 18 (granting in part and denying in part Choice Hotels' motion for summary judgment (Dkt. 15)). On September 2, 2016, Choice Hotels timely filed its supplemental brief. Dkt. 19. Soon after, Frontier Hotels suggested bankruptcy (Dkt. 21) and the court stayed the case (Dkt. 22). On December 21, 2017, Choice Hotels moved to reinstate the case and asked the court to rule on damages. Dkt. 23. The court reinstated the case but provided Defendants a post-stay opportunity to respond. Dkt. 24. Defendants did not take advantage of that opportunity.

Defendants could operate a COMFORT INN® but had to stop using the marks upon termination. *Id.* Defendants breached. *Id.* On two occasions, Choice Hotels alerted Defendants as to the breach. *Id.* On both occasions, Choice Hotels gave Defendants a chance to cure. *Id.*

After Defendants did not cure, Choice Hotels terminated the agreement and instructed Defendants to stop using any of its registered trademarks. *Id.* Defendants did not stop. *Id.* Instead, Defendants continued to use the marks for over a year including up to the point Choice Hotels filed its supplemental brief. Dkt. 19 at 6–7. Although Defendants removed some signs after this suit began, Defendants continued to use the marks in photographs posted to third-party booking websites and on roadside signs. *Id.* During discovery, Defendants provided incorrect statements about when they removed the signs. *Id.* Throughout this period, Defendants knew they needed to stop using the marks yet continued to do so anyway. Defendants even ignored the court's order that permanently enjoined their use of those marks. Dkt. 18.

### 1. Income, expenses, and profits

According to profit-loss sheets from December 2014 to February 2016, Defendants earned a monthly average income of $58,970.28 and accrued $48,646.86 in monthly expenses.[2] Dkt. 19 at 8. From December 2014 through February 2016, Defendants reported $190,641.69 in profits. *Id.* Because Defendants did not provide profit-loss documentation for March through August of 2016, Choice Hotels estimates based on figures from the previous year. *Id.* at 9. Specifically, Choice Hotels estimates that Defendants earned $61,940.56 in profits over those six months. *Id.*[3] Adding

---

[2]Choice Hotels argues that Defendants' monthly expenses should exclude certain line items including: (1) interest expenses; (2) Best Western expenses; (3) processing fees; and (4) franchise fees. Dkt. 19 at 8. The court agrees. The $48,646.86 figure excludes those expenses.

[3]Choice Hotels calculates Defendants' average monthly profit at $10,323.43 by subtracting Defendants' average monthly expenses ($48,646.86) from its average monthly income ($58,970.28).

together Defendants' reported profits of $190,641.69 and the estimated profits of $61,940.56, Choice Hotels calculates Defendants' total profits for December 2014 through August 2016 as $252,582.25. *Id.*

### 2. Franchise fees

Under the franchise agreement, franchisees owed Choice Hotels 9.5% of their gross room revenue (not net profits). Dkt. 17-25. From December 2014 through February 2016, Defendants' total income was $917,816.89. Dkt. 19. Using the average monthly income of $58,970.28, Defendants' estimated total income for March through August 2016 was $358,825.34. Together, Defendants' gross room revenue was $1,273,642.23.

## II. Analysis[4]

The Lanham Act provides monetary relief for successful trademark infringement claims. 15 U.S.C. § 1117. Under § 1117(a), a plaintiff can recover: (1) defendant's profits; (2) its actual damages; and (3) the costs of the action. *See* 15 U.S.C. § 1117(a). Under that subsection, the court can award up to three times actual damages. *Id.*; *see also Ga.-Pac.*, 781 F.3d at 717. If the court finds that a defendant intentionally infringed a counterfeit mark, the court can: (1) treble plaintiff's actual damages or defendant's profits; and (2) award reasonable attorneys' fees. 15 U.S.C. §1117(b)(1); *see also Ga.-Pac.*, 781 F.3d at 717; *Yah Kai World Wide Enters. Inc. v. Napper*, 292 F. Supp. 3d 337, 364 (D.C. Cir. 2018) (accord). "Great latitude is given the district court in awarding damages under the Lanham Act." *Reservoir, Inc. v. Truesdell*, 1 F. Supp. 3d 598,

---

[4]Here, the instant motion conflates analysis under 15 U.S.C. §§ 1117(a) and (b). *See* Dkt. 16 at 22. Because a recent Fourth Circuit case held that a district court erred by doing so, the court differentiates that analysis here. *Ga.-Pac. Prods. LP v. von Drehle Corp.*, 781 F.3d 710, 717 (4th Cir. 2015); *Yah Kai World Wide Enters. Inc. v. Napper*, 292 F. Supp. 3d 337, 364 (D.C. Cir. 2018) (accord); *see also Baker v. DeShong*, 821 F.3d 620, 624 (5th Cir. 2016) (citing *Ga.-Pac.*, 781 F.3d at710 for a different proposition)).

617 (S.D. Tex. 2014) (Atlas, J.) (quoting *Martin's Herend Imports, Inc. v. Diamond & Gem Trading USA, Co.*, 112 F.3d 1296, 1304 (5th Cir. 1997)).

    1.    **Defendants' profits**

Choice Hotels can recover Defendants' profits. 15 U.S.C. § 1117(b). Section 1117(b) directs the court to first determine Defendants' profits under § 1117(a). *See id.* ("in assessing damages under [§ 1117(a)] . . . in a case involving . . . a counterfeit mark . . . the court shall . . . enter judgment for three times such profits or damages, whichever amount is greater . . . if the violation consists of intentionally using a mark . . . knowing such mark is a counterfeit mark."). For profits, "the plaintiff shall be required to prove defendant's sales only." 15 U.S.C. § 1117(a). Defendants must "prove all elements of costs or deductions claimed." *Id.* Defendants did not respond, let alone claim any deductions.

Choice Hotels calculated Defendants' profits as $252,582.25. Dkt. 19 at 8. The court finds that the record supports that calculation. *See* Dkt. 19-5; Dkt. 19-9 at 2. Specifically, Choice Hotels provided evidence of Defendants' profit-loss sheets from December 2014 to February 2016 amounting to $190,641.69.[5] *Id.* Between March and August of 2016, Choice Hotels estimates Defendants received $61,940.56 in profits. Accordingly, Choice Hotels is entitled to recover $252,582.25 for Defendants' profits from December 2014 through August 2016.

In addition, Choice Hotels has shown that Defendants used the COMFORT family of marks knowing that those marks were counterfeited. *Id.* at 12. Specifically, Choice Hotels points to the franchise agreement, multiple warnings, the termination letter, and the filing of this lawsuit. *Id.*

---

    [5]Choice Hotels argues that Defendants' expenses should exclude certain line items including interest expenses, Best Western expenses, processing fees, and franchise fees. Dkt. 19 at 8. The court agrees.

4

Taken together, Choice Hotels has shown that it is entitled to treble damages under § 1117(b)(1). *Id.* Because Defendants' profits are greater than Choice Hotels' actual damages, Choice Hotels can recover three times $252,582.25. *Id.* at 13; *see infra* Section II.2. Accordingly, Choice Hotels shall receive a total of $757,746.75. Dkt. 19 at 12 ((3)($252,582.25)).

### 2.  Actual Damages[6]

Choice Hotels can recover reasonable royalties as a measure of its actual damages. *See Boston Prof'l Hockey Ass'n v. Dallas Cap & Emblem Mfg.*, 597 F.2d 71, 75–76 (awarding royalty damages to hockey insignia licensor when defendants sold hats with those insignias without obtaining a license); *see also Choice Hotels Int'l v. Patel*, 940 F. Supp. 2d 532, 546 (S.D. Tex. 2013) (Costa, J.) (citing cases). Defendants owed Choice Hotels $120,996.01 for the franchise fees (or 9.5% (the agreed franchise fee) of $1,273,642.23 (their gross room revenue from December 2014 through August 2016)). Dkt. 17-25. Accordingly, Choice Hotels is entitled to recover $120,996.01 for its actual damages.

### 3.  Attorneys' Fees

Choice Hotels is entitled to reasonable attorneys' fees. 15 U.S.C. § 1117(b)(1). Defendants continued to use the marks despite multiple forms of notification and a permanent injunction. *See supra* Section I; *see also* Dkt. 18; Dkt. 19 at 6–7, 10–12. The court finds Defendants intentionally infringed a counterfeit mark. Therefore, reasonable attorneys' fees are warranted. 15 U.S.C. § 1117(b)(1).

---

[6] Although Choice Hotels did not sue Defendants for breach of contract, Choice Hotels asked this court to award it liquidated damages as set out in the franchise agreement. Dkt. 15 at 2. The court declined. *See* Dkt. 18 at 10–11. Choice Hotels repeats its request for liquidated damages without adding any supporting authority. Dkt. 19 at 11. Once again, the court declines. *See* Dkt. 18 at 10–11.

Choice Hotels seeks $37,194.50 in attorneys' fees. Dkt. 19. The evidence shows that: (1) partners spent 70.7 hours at a rate of $325 per hour; (2) senior counsel spent 12.6 hours at a rate of $285 per hour; and (3) one paralegal spent 1 hour at a rate of $140 per hour. Dkt. 19-9 at 2–3. When Choice Hotels filed its supplemental brief, the August 2016 monthly invoices had not been generated. *Id.* at 3. The firm estimated that in August: (1) partners spent 18.7 hours at a rate of $325 per hour, and (2) senior counsel spent 3.3 hours at a rate of $285 per hour. *Id.* Choice Hotels also estimated that an additional $3,500 was "likely to be billed on this matter in September 2016." *Id.* With the exception of the September 2016 estimations, the court finds that rates of $325 for 89.4 partner hours, $285 for 15.9 senior counsel hours, and $140 for one paralegal hour is reasonable in this case. *See Heidtman v. County of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999) ("This Court uses the 'lodestar' method to calculate attorney's fees. A lodestar is calculated by multiplying the number of hours reasonably expended by an appropriate hourly rate in the community for such work.") (internal citations omitted). Accordingly, the court GRANTS the motion and thus AWARDS $33,395.50 in attorneys' fees.

## II. Conclusion

For these reasons, the court AWARDS Choice Hotels: (1) $757,746.75 for Defendants' profits; (2) $120,996.01 for its actual damages; and (3) $33,395.50 for attorneys' fees.

Signed at Houston, Texas on May 22, 2018.

_____
Gray H. Miller
United States District Judge